UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY KORTE,

        Plaintiff,

v.                                      Case No. 10-cv-10475
                                            Paul D. Borman
                                            United States District Judge

FORD MOTOR CO, INC.,
STEPHEN O'NEILL, and
RICHARD POPP,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This case arises out of Kelly Korte's ("Plaintiff") termination from Ford Motor Company. Plaintiff claims she was defamed when her managers, Stephen O'Neill and Richard Popp (collectively with Ford, "Defendants"), assessed her as a "Partial Achiever" in connection with a 2009 downsizing initiative called the Salaried Involuntary Reduction Process ("SIRP"). Plaintiff also claims that Defendants violated her employment contract by failing to act in "good faith," and that Defendants violated her benefits contract by failing to release Plaintiff's retirement funds in a timely manner. Finally, Plaintiff claims that she was wrongfully terminated in retaliation for complaints regarding Ford's alleged failure to vest its contract employees in its Saving and Stock Investment Plan for Salaried Employees (the "401(k) plan").

Plaintiff filed the instant Complaint in Wayne County Circuit Court on December 14,

1

2009.  Defendants removed the Complaint to this Court on February 3, 2010 (Dkt. No. 1), and filed their Answer on the same day (Dkt. No. 2).  Now before the Court is Defendants' Motion for Summary Judgment, filed on August 6, 2010 (Dkt. No. 14).  Plaintiff responded on September 7, 2010 (Dkt. No. 16), and Defendants' filed a Reply on September 21, 2010 (Dkt. No. 17).  Oral argument was held on December 20, 2010.

For the reasons stated below, the Court will grant Defendants' Motion and dismiss the case in full.

## II.  BACKGROUND

Plaintiff began working for Ford as a contract employee in late 2003.  (Defs.' Mot. Ex. A - Korte Dep. at 38).  She was subsequently hired as a Ford salaried employee in July 2007. Plaintiff's responsibilities involved managing employee benefits, focusing on life insurance plans.  Plaintiff's direct manager was Defendant O'Neill,[1] who in turn reported to Defendant Popp.  (Korte Dep. at 45, 50).

### A.  Plaintiff's Requests to Be Fully Vested Under Ford's 401(k) Plan

After she was hired into the salaried position, Plaintiff requested that her service as a contract employee be applied to the vesting period of the 401(k) plan.[2]  (Korte Dep. at 75).  In addition to this request, Plaintiff informed the 401(k) manager, Rosemarie Parker, that the

---

[1]Initially, Plaintiff's manager was Karl Dalal.  (Korte Dep. at 39).  However, Dalal was replaced by O'Neill as a result of a reorganization in 2008.  (Korte Dep. at 45).  Dalal's actions as Plaintiff's manager are not at issue in this case.

[2]Generally, where a company contributes matching funds in a defined contribution retirement plan, those funds must "vest," and the employee must have a nonforfeitable right to 100 percent of the matching funds, once the employee has completed three years of service.  *See generally* I.R.C. § 411.

2

vesting issue affected all former contract employees, and that the plan might violate "IRS guidelines." Parker informed Plaintiff that her issues would be addressed. Plaintiff made numerous requests to be fully vested during her employment and was repeatedly told that Ford was aware of the issue.

**B. Plaintiff's Termination**

In December 2008, Plaintiff was given a performance review assessing her performance over the 2008 calendar year. (Korte Dep. at 56). Each performance review included an overall assessment section in which employees were categorized as either a "Top Achiever," "Achiever," or "Improvement Required." Plaintiff was classified as an "Achiever." However, within the "Achiever" classification there were further distinctions, which were not contained on the Performance Review but were nonetheless used by management. (Korte Dep. at 70; Defs.' Mot. Ex. B - O'Neill Decl. ¶ 6). These additional distinctions were "Top Achiever," "High Achiever," "Achiever," and "Partial Achiever." Plaintiff was categorized as a "Partial Achiever." (O'Neill Decl. ¶ 10).

Termination decisions in connection with the 2009 SIRP initiative were based on employees' performance in 2008; specifically, employees who were categorized as "Partial Achievers" were selected for termination. On January 14, 2009, Defendant O'Neill informed Plaintiff that her employment would be terminated pursuant to the 2009 SIRP, but that she would remain on the payroll until January 31, 2009. (Korte Dep. at 99-100; O'Neill Decl. ¶ 14).

**C. Subsequent Employment**

Prior to being notified of her impending termination, Plaintiff was contacted by a job "headhunter" in December 2008 regarding an employment opportunity with American Greetings

in Cleveland, Ohio. (Korte Dep. at 21). In mid- and late-January 2009 – after her notice of termination but prior to her removal from Ford's payroll – Plaintiff twice interviewed for the position at American Greetings. In late February 2009, Plaintiff accepted American Greetings' employment offer and subsequently began her employment on March 2, 2009[3]. (Korte Dep. at 31).

**D. Disbursement of Plaintiff's 401(k) Funds**

Immediately after she was notified by Defendant O'Neill that her employment was terminated pursuant to the 2009 SIRP, Plaintiff sought to withdraw all funds invested in her portion of the 401(k) plan. (Korte Dep. at 101). However, at the time Plaintiff initially contacted Fidelity Investments, the plan provider, Fidelity's records did not reflect that Plaintiff was a terminated employee or that she was fully vested. Plaintiff contacted Ford at least three times from January 15, 2009 to March 1, 2009, regarding these issues with her 401(k) account. (Pl.'s Resp. Ex. 2 - E-mails). Plaintiff was able to fully withdraw her 401(k) account – including the fully vested portion of her employer contributions – on April 1, 2009.[4] (Defs.' Ex. C - Parker Decl. ¶ 9).

---

[3]Plaintiff's offer from American Greetings included a $30,000 increase over her annual Ford salary; guaranteed sale of her principal residence at fair market value; payment of all customary expenses in connection with the sale of her home; temporary living expenses in the Cleveland area for up to 60 days; expenses for two trips to and from Cleveland and her home in Michigan, and all moving and storage expenses. (Korte Dep. Ex. 2 - Offer Letter).

[4]Plaintiff's Complaint states that the 401(k) funds were not "turned over to her" until March 9, 2009. (Comp. ¶ 19). However, she contacted Ford via e-mail on March 20, 2009, claiming that she could not withdraw her funds because Fidelity still did not list her as a terminated employee. (Pl.'s Resp. Ex. 2 - E-Mails). Further confusing this issue is Plaintiff's deposition testimony, in which she states that she withdrew the 401(k) money "sometime in mid to the end of February." (Korte Dep. at 102). Nevertheless, it is undisputed that Plaintiff was not able to withdraw the account when she initially requested to do so.

Plaintiff alleges that her termination was not based on her performance.  Instead, Plaintiff alleges that she was terminated because of the issues she raised regarding contract employee vesting.  Further, Plaintiff claims that categorizing her as a "Partial Achiever" was defamatory. Plaintiff also alleges that she lost $700 as a result of Ford's failure to immediately update and vest her Fidelity account, leaving her unable to withdraw funds from the account until April 2009.

### III.  LEGAL STANDARD

Defendants have moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure.  This rule provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of showing that there is no genuine issue of material fact.  *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986).  Once this burden is met, the opposing party must produce some facts showing there is a genuine issue for trial.  *Id.*  If a rational trier of fact could not, based on the record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party.  *Id.*  The Court must view the facts and draw all reasonable inferences in favor of the non-moving party.  The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV.  ANALYSIS

5

Defendants' arguments, and Plaintiff's response to each argument, are addressed below.

**A.  Breach of Benefit Contract (Count I)**

At oral argument on the instant Motion, Plaintiff's counsel stipulated to the dismissal of Count I, which was the basis for federal jurisdiction in this case because it related to Plaintiff's employee benefits contract and was therefore governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

**B.  Jurisdiction Over Remaining State Law Claims**

Having dismissed Plaintiff's ERISA claim, which was the basis for federal jurisdiction, the Court now considers the remaining state law claims.

Pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state law claims in a civil case whenever the court has subject matter jurisdiction, so long as the state and federal claims are derived from a "common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). "Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case . . . involving pendent state-law claims." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).

Plaintiff's state law claims have been fully briefed and argued before this Court.  Having analyzed both Plaintiff's and Defendants' arguments, the Court in its discretion, and in consideration of judicial economy, convenience, and fairness to the parties, will exercise supplemental jurisdiction over the pendant state law claims.

**C.  "Good Faith" Breach of Employment Contract (Count II)**

6

On July 9, 2007, Plaintiff and a representative of Defendant Ford signed a document entitled "EMPLOYMENT AGREEMENT."  (Korte Dep. Ex. 3 - Employment Agreement).  The agreement stated:

> I understand that my employment is not for any definite term, and may be terminated at any time, without advance notice, with or without cause, by either myself or employer at the will of either.  I agree to conform to such personnel practices, procedures and policies, and changes therein, as my employer may from time to time adopt, and that my employment shall be subject to such layoffs, and my pay and benefits to such adjustments as my employer may from time to time determine.

*Id*.  Plaintiff alleges that Defendants breached this agreement by failing to act in "good faith." (Comp. ¶¶ 23-28).

Defendants argue that Plaintiff's claim should be dismissed because she has not presented any evidence overcoming the presumption of "at will" employment under *Lytle v. Malady*, 458 Mich. 153 (1998).  Plaintiff responds that: "Since Defendants choice [sic] to base the January 2009 layoffs on the basis of merit, they had a duty to act in good faith."  (Pl.'s Br. at 4).  Plaintiff provides no statutory law or case law in support of her argument.

Michigan courts have "been unwilling to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in cases involving at-will employment relationships."  *Hammond v. United of Oakland, Inc.*, 193 Mich. App. 146, 152, 483 N.W.2d 652, 655 (1992); *see also Otis v. Zayre Corp.,* 703 F.Supp. 634, 637 (W.D. Mich. 1988) (holding "that no cognizable claim for breach of an implied covenant of good faith and fair dealing exists in the employment context under Michigan law.").  Regardless of whether Plaintiff was able to overcome the presumption of at-will employment, she has no cognizable claim for good faith violation of her employment contract. Thus, the Court will dismiss Count II of the Complaint.

## C. Defamation

Plaintiff claims that Defendants made defamatory statements about her. The alleged

defamatory statements are:

> that Plaintiff was a partial achiever, not a team player who also
> needed more understanding and sensitivity to priorities and the
> needs of others, to consistently develop and maintain positive
> working relationships with others even when busy, to routinely
> demonstrate respect for peers and others, to display greater
> emotional resilience and adaptability[,] . . . that Plaintiff needed to
> be accountable and make recommendations with compelling
> rationale . . . . [and] that she needed to accept accountability while
> minimizing complaints and blame and to listen to others for
> understanding.

(Comp. ¶ 31). The elements of a defamation claim include: "(1) a false and defamatory

statement concerning Plaintiff; (2) an unprivileged communication to a third party; (3) fault

amounting to at least negligence on the part of the publisher; and (4) either actionability of the

statement irrespective of special harm (defamation *per se*) or the existence of special harm

caused by the publication (defamation *per quod*)." *Minnis v. McDonnell Douglas Technical

Services Co.*, 162 F. Supp. 2d 718, 740 (E.D. Mich. 2001).

Defendants argue that the above statements are not "defamatory" because they merely

describe Defendant O'Neill's opinion regarding areas in which Plaintiff could improve.

Defendants also argue that Plaintiff cannot prove the alleged defamatory statements were

"published" to anyone other than Ford employees who were privileged to know this information.

In her response, Plaintiff points out that she was given "a key role in implementing

benefit cost savings [that] she helped obtain as a member of the Ford/UAW negotiating team."

(Pl.'s Br. at 5). Plaintiff seems to argue that, based on her accomplishments during her Ford

employment, a reasonable juror could find that the performance review comments were

8

defamatory.  Plaintiff also argues that no Ford employees were privileged to know the alleged

defamatory information because the Defendants were not acting in "good faith."  Plaintiff does

not address Defendants' argument that the defamatory comments are protected as Defendant

O'Neill's opinions.

Plaintiff's defamation claim must be dismissed because Defendants had a qualified

privilege to discuss characteristics of Plaintiff's management skills in connection with her

employment.

> The elements of a qualified privilege are: (1) good faith; (2) an
> interest to be upheld; (3) a statement limited in scope to this
> purpose; (4) a proper occasion; and (5) publication in a proper
> manner and to proper parties only.

*Minnis*, 162 F. Supp. 2d at 740.  Plaintiff argues that qualified privilege does not apply because

the statements were not made in "good faith."  However, to overcome this privilege Plaintiff

must show more than merely a lack of good faith; she must show "actual malice."  *Id*.  The only

evidence Plaintiff has presented is her history as an employee with Defendant Ford, in which she

was given "key roles" on various issues, and her own testimony disagreeing with Defendant

O'Neill's assessment.  While this evidence may be enough to show the statements were

negligent, a reasonable juror could not infer that any of these Defendants recklessly disregarded

the truth or actually knew the allegedly defamatory statements were false.  *Id*.

**D.  Termination in Violation of Public Policy[5]**

---

[5]Count IV of Plaintiff's Complaint is entitled "Wrongful Termination."  However,
Defendants address the claim as based on public policy.  (Defs.' Br. at 17).  In her response,
Plaintiff does not take issue with this characterization.  (Pl.'s Br. at 5).  Therefore, the Court will
address Defendants' arguments and Plaintiff's response as appropriately addressing a claim of
termination in violation of public policy.

9

Plaintiff alleges that her employment was terminated "in retaliation for Plaintiff's complaints about the failure of Defendant Ford to properly vest its contract employees in the [401(k) plan]." (Comp. ¶ 47). Although at-will employees are generally subject to termination at any time for any reason, Michigan courts have recognized an exception "based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski v. Michigan Consolidated Gas Co.*, 412 Mich. 692, 695 (1982). Defendant argues that Plaintiff's complaints about the 401(k) plan cannot sustain a public policy claim, and that Plaintiff cannot show a causal connection between her complaints and her eventual termination pursuant to the SIRP program. In her Response, Plaintiff states:

> there is no basis whatsoever in the claims that Plaintiff was not a team player or that Plaintiff was a partial achiever. The vesting of contract employees was not taken care of until after the Plaintiff was terminated. It is therefore reasonable for Plaintiff to draw the inference that she was terminated from employment in retaliation for her attempts to rectify the contract employee vesting issue.

(Pl.'s Resp. at 5).

It appears to be well-settled that Michigan courts do not recognize a cause of action for a discharge in retaliation for reporting violations of law. *See generally Cushman-Lagerstrom v. Citizens Ins. of America*, 72 Fed. Appx. 322, 328-29 (6th Cir. 2003) (collecting cases and noting that "Plaintiff has not identified, and we have not located, any controlling or persuasive Michigan case law that has extended the public policy exception to discharges in retaliation for reporting violations of law to superiors."). Plaintiff cites no case law supporting her claim. Thus, this count will be dismissed.

## V.  CONCLUSION

For the reasons stated above, the Court will:

10

1. **DISMISS** Count I per Plaintiff's stipulation at the oral argument;

2. **GRANT** Defendants' Motion for Summary Judgment, and

3. **DISMISS** the action with prejudice.

This closes the case.


**SO ORDERED.**


                                         S/Paul D. Borman                    

                                           PAUL D. BORMAN

                                           UNITED STATES DISTRICT JUDGE

Dated:  January 12, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 12, 2011.


                                           S/Denise Goodine                   

                                           Case Manager

11